IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ERIC ANTONIO ESPINOZA,

Defendant.

CR 21-43-BLG-SPW

ORDER

Before the Court is Defendant Eric Espinoza's Motion to Suppress. (Doc. 24). Espinoza moves to supress all evidence resulting from his arrest on June 2, 2021, and all evidence obtained following the search of the residence he was staying at pursuant to a warrant issued to search 1269 Yellowstone Ave., Billings, Montana. (Doc. 24 at 1-2). On January 7, 2022, the Court held a hearing on the motion. (Doc. 35). After considering the parties' briefing, the testimony at the hearing, and the exhibits submitted to the Court, the Court grants Espinoza's motion as to the arrest and denies the motion as to the search of the apartment.

**I. Background**

Detective Tanner Buechler applied for a warrant to search and seize property at 1269 Yellowstone Ave., Billings, Montana. Montana District Court Judge

Collette Davies signed and issued the warrant on June 2, 2021. In his affidavit, Buechler described his belief that there was probable cause to search the apartment. (Doc. 26-1).

At the hearing, the Government called TFO Aaron Harris. Harris is a detective with the Yellowstone County Sheriff's Office assigned to the Eastern Montana High Intensity Drug Trafficking Area Task Force ("EMHIDTA"). Harris was part of the operation that EMHIDTA developed to execute the search warrant and arrest Espinoza. Officers determined that, given Espinoza's criminal history of assault with a weapon and the large drug trafficking organization they suspected to operate out of the apartment, they would arrest Espinoza away from the residence and then execute the warrant. The officers successfully executed their plan. They observed Espinoza leaving the apartment on a bike. After he traveled a couple blocks, he pulled into the parking lot of the 1145 Club. At that time, several officers pulled up, got out of their vehicles, and drew their weapons. Harris testified that one of the officers then put Espinoza in handcuffs.

Harris testified that he believed the officers had probable cause to arrest Espinoza at that point. He began by describing the scope of the investigation into the drug trafficking organization they believed Espinoza was associated with. EMHIDTA had been coordinating with agencies in other states investigating an organization based out of Mexico and Phoenix, Arizona. The organization, agents

believed, employed low-level runners to transport narcotics into cities, including Billings. The runners then sold the drugs and returned to Phoenix with the profits. Primarily these runners arrived in Billings by bus. Agents believed as many as six to ten traffickers arrived in Billings in this way. Three to four of the runners had operated out of the same Yellowstone Ave. apartment. They would stay a week or two, according to agents, sell their drugs, and then depart and a new runner would arrive. Officers noted that the transactions always took place away from the apartment. They learned this through sources of information as well as controlled buys.

Agents believed Espinoza to be a runner. They recovered his identification from a bus that had come from Phoenix. He stayed at the Yellowstone Ave. apartment and left on his bicycle to conduct what agents believed was a drug transaction the previous day. They saw him meet a person known to be involved in drug trafficking. They met a couple blocks from the apartment. The meeting was short, which according to Harris is indicative of drug transactions. Officers also observed Espinoza on his phone quite a bit. According to Harris, the trafficking organization employed a communications strategy involving many short messages over a brief period that the officers believed was in line with Espinoza's phone activity. This behavior was apparently essentially identical to the behavior of other known drug traffickers staying at the Yellowstone Ave.

apartment. However, on the date of the arrest, officers merely observed Espinoza leave the apartment on his bike; they did not see him meet with anyone or observe any suspicious activity.

## II. Analysis

### *A. Validity of the Search Warrant*

Where, as here, a search is conducted by state law enforcement pursuant to a state warrant, and is not otherwise "federal in character," the warrant need only conform to the requirements of the Federal Constitution, rather than to the procedural requirements of Rule 41, Fed. R. Crim. P. See *United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987). The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)) (internal quotation omitted). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United*

*States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)).

To withstand constitutional scrutiny, a warrant must particularly describe the place to be searched and the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A particular warrant prevents general searches, and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.*, 540 U.S. at 561 (citation and internal quotation omitted). The "test for determining the sufficiency of the warrant description is whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985) (internal quotation omitted).

The task of a court reviewing a signed warrant is not to conduct a *de novo* review. *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). Instead, the standard is whether, taken in its entirety, the evidence presented in the warrant application provided a substantial basis to support the magistrate's finding of probable cause. *Id.*

Espinoza argues that the search warrant application was inadequate to allow the issuing judge to make an independent determination of probable cause. (Doc.

25 at 12). Espinoza asserts that the affidavit contains only Buechler's unsupported assertions and conclusory allegations, including Buechler's failure to provide any information how his informant came by their knowledge. (Doc. 25 at 11). The Government states that the issuing magistrate had substantial basis to find probable cause given the information provided by informants corroborated by Espinoza's meeting with a known drug distributor and his residence at a known drug house. (Doc. 27 at 4).

The Court agrees with the government. The facts presented, when taken as a whole, form a sufficient basis for the District Court Judge to determine there was probable cause to search. The warrant described the conduct of members of a suspected drug trafficking organization and how Espinoza's conduct conformed to that pattern. Although the application relied to a degree on Buechler's conclusions, the application walked through the steps of that analysis, allowing the judge to determine the appropriate weight to give to those conclusions. The Court cannot say that the issuing judge did not have a substantial basis to grant the warrant application, and therefore the warrant is valid. Accordingly, Espinoza's motion to suppress evidence obtained through the search of the residence is denied.

*B. Arrest of Espinoza*

The Fourth Amendment allows police to conduct investigative stops when the officers have "reasonable suspicion to believe that criminal activity may be

afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000). "The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). The standard is "not a particularly high threshold to reach." *United States v. Valdes-Vegas*, 738 F.3d 1074, 1078 (9th Cir. 2013).

A court must look at the totality of the circumstances of each case when determining whether reasonable suspicion existed. *Arvizu*, 534 U.S. at 273. Each fact cannot be considered individually and must be evaluated in the context of the case. *Valdes-Vegas*, 738 F.3d at 1078. In other words, a series of factors, that when looked at individually are consistent with innocent behavior, can amount to reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). "This process allows officers to draw on their own experience and specialized training to

make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273.

Montana Code Annotated 46-6-311(1) states that "[a] peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest." The Montana Supreme Court has stated that "probable cause to arrest exists when the facts and circumstances within a police officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe someone is committing or has committed an offense." *State v. Van Dort*, 68 P.3d 728, 732 (Mont. 2003) (citing *State v. Williamson*, 965 P.2d 231 (Mont. 1998). Specifically, "probable cause for an arrest requires an existing connection between the individual and the particular criminal activity." *Id.*

Espinoza argues that he was wrongfully arrested. (Doc. 25 at 12). He states that he was not engaged in any activity that would justify an investigative detention or arrest. The government responds that Espinoza's whereabouts, purportedly drug-related activities, and the pattern of other residents at the apartment dealing drugs provided probable cause to support Espinoza's arrest. (Doc. 27 at 7).

The Court agrees with Espinoza. Agent Harris candidly admitted that officers planned to arrest Espinoza upon his departure from the apartment and

admitted that they planned to arrest him to make executing the search warrant safer and easier. This means, however, that officers did not attempt to find probable cause that Espinoza was currently committing an offense as he left the apartment, as required under the first prong of Montana Code Annotated 46-6-311(1). Therefore, for the arrest to be valid, officers must have had probable cause that Espinoza had committed an offense and that existing circumstances required immediate arrest. The agents relied on the wealth of information they possessed about Espinoza and the trafficking organization they believe he was associated with to supply the probable cause to arrest; crucially though, the Government does not present any argument or reason as to what circumstances required Espinoza's immediate arrest. This is insufficient under Montana's arrest statute. Typically, in a situation such as this, an arrest warrant would be obtained from a judge prior to arresting an individual for a crime allegedly committed in the past. Therefore, officers wrongfully arrested Espinoza.

The evidence obtained because of this arrest, including any statements made, must be suppressed.

## III. Conclusion

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Espinoza's Motion to Suppress. (Doc. 24). Evidence obtained during or

after Espinoza's arrest is suppressed. Evidence obtained during the search of the residence at 1269 Yellowstone Avenue is admissible.

DATED this 8th day of February 2022.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge